And Judge Benson, we're happy to have you with us, too. We're ready to start. Our first case this morning is ESCOBAR v. SHINSEKI. Mr. Fender. Yes, thank you, Your Honor. Good morning, and may it please the Court. This appeal on behalf of Mr. Escobar arises out of the denial of a total disability rating based upon his individual unemployability under the authority of Regulation 4.116. But the issues in the appeal arise out of the statutory language in the duty-to-assist statute with respect to expert opinions. Specifically, that language provides that in 5103AD1, that the duty-to-assist shall include obtaining a medical decision, excuse me, a medical opinion necessary to make a decision on the claim. In a series of precedential decisions, the Veterans Court has established two rules with respect to that language. And I use the word rules of law because it's not quite clear whether they were either interpreting that language to establish these rules of law or whether they were creating, judicially created rules of law that are engrafted onto that language. And the first rule is that the phrase necessary to make a decision on the claim is synonymous with adequate to adjudicate the claim. And they go on to explain, particularly in Nieves-Rodriguez v. Peek, that adequacy refers to the rationale for the opinion that is given. So whether or not opinions are adequate is a question of fact and we can't touch that. So if your argument to this Court is that the opinions in this case were not adequate, we don't have jurisdiction. Well, that is what I'm here to do today to persuade you that it is not a question of fact with respect to expert opinion testimony that is used to deny benefits in the context of a very unique, paternalistic veteran system. And the reasons are several. First off, each one of the CABC decisions that has said that this is a question of fact is based upon the 2008 decision in Darius v. Peek. And each one of the subsequent decisions simply cites that case for that proposition. But when you look at Darius, it cites two authorities for that proposition. One is the statute that simply provides that questions of fact are reviewed under the clearly erroneous standard. And then Gilbert v. DeWinsky, which simply describes what the clearly erroneous standard is. Neither one of those authorities, nor Darius, explains why in this context adequacy is a question of fact. And again, it ties back to the language necessary to decide the case. Well, now, if we were going to look at facts, if we would see in this 2007 muscle exam report that they said, well, he can't lift 50 pounds, but he can work at a computer, no TDIU. But that's if we get to the facts. And how could we decide this case without getting to those facts? Well, the point of our appeal is that, and this is what the Veterans Court's presidential decisions have focused on, is whether or not the rationale that is given is sufficient for the VA adjudicator to assess the probative value of the opinion that is given. You see, that's the reason I mentioned this. In order to assess it, I've got to go and examine those facts, which as Judge Moore points out, is beyond our capability. Well, you do have the authority in the jurisdiction, number one, the facts of the rationale for an expert's opinion are undisputed. They are there. They are there in the report. And it's a question here, what we are saying is that the Veterans Court applied the wrong standard of review to determining whether or not that rationale was sufficient to enable a VA adjudicator to assess the probative value of the opinion itself. And in our brief, we did go forward to try to show out the areas where there were problems with this particular opinion to show that there are instances here. Now, as you pointed out, they said that he could work at a computer station. There are several unanswered questions with respect to that particular rationale that make it impossible for the VA adjudicator or us to determine whether or not the ultimate opinion has any probative value. Number one, he determines that Mr. Escobar suffers from weakness and fatigue and fecal incontinence. Yet he doesn't explain how someone with fecal incontinence can sit at a computer table for eight hours a day to do work. Maybe there's a reason. Maybe there isn't. We don't know. Neither did the VA adjudicator. Also, they determined that basically he had studied and had work experience as a medical technologist. They're assuming that all that a medical technologist does is work at a computer table. Where does that information come from? No, there isn't any information in the record as to what the responsibilities of a medical technologist are. And in addition, when he last worked as a medical technologist, his rating for… In what universe is that a question of law? That's the question you're saying is unanswered in this case, and that's why the report is inadequate. Well, for me to decide the report is inadequate, I have to look at that question and see whether it is a valid question or not.  The ultimate question of law is whether or not that rationale is reviewed under a clearly erroneous standard or whether it's reviewed under a de novo standard. And we're arguing that it's under a de novo standard. Because you're saying it's a question of law. The standard of review is only relevant once you decide what the underlying question is, fact or law. Questions of fact, clear or error. Questions of law, de novo. Well, let me cite a couple of quotations from some cases. First comes from your concurrence in Gamble, where the issue was whether or not the veteran was entitled to issue interrogatories to discover the basis for the conclusion of the expert. And you indicated that the critical evidence in VA benefits cases is usually medical opinion evidence. I would say it is in the vast majority of them. And, quote, thorough analysis of the probity of the medical opinion is critical to ensuring the fairness of the VA adjudication process. And the Veterans Court has indicated that it is the factually accurate, fully articulated, sound reasoning for the conclusion that contributes probative value to a medical opinion. Most of the probative value of a medical opinion comes from its reasoning. And this court in Pereira said that an expert's opinion is no better than the soundness of the reason supporting it. What I'm here arguing is, is in the context of the unique veteran's adjudication process, where it is paternalistic and where the veteran is not entitled to an attorney, that the only way that anybody can judge the probative value and the weight or assess the weight of an expert opinion is if that opinion is fully articulated. And then to determine whether it's fully articulated should be a question of fact, so that there is essentially an even playing field among all of the veterans. Under a clearly erroneous standard, all it takes to defender is, again, venturing a little into the facts. What was the retirement date for Mr. Escobar? It was the mid-1990s.  There are three different dates, 93, 96, 99. He says 1993. That's what he told the veterans. Is that relevant to CDIU? No, it's not. Why it is pointed out that he retired and that he retired by age and discipline, age and duration of work, to me is totally irrelevant to whether or not, especially when it was 12 years ago, is totally relevant to what his condition is today and what his rating should be today, 12 years later. That's an issue for another day. It has not been an issue that has been briefed in this particular case. I would argue that if you look at the clearly erroneous standard, all it takes for a judge to approve the decision by the board is that it be plausible, which means that one veteran's opinion or the rationale for an opinion in one veteran's case, one judge may decide that it is adequate, and in another case, another judge may decide that it is inadequate. A de novo review helps increase the chances that you're going to have a fair adjudication where similarly situated veterans are going to be treated the same way. Now, I think it's important to compare it to... Does a government-related medical expert come in on every case? This court has decided that it's not required in every case. If you're going to bring it up to this court all the way to the federal circuit every time, wouldn't that be the way people would think? Actually, a vocational expert is the best evidence. But you're saying they should have had here, they didn't have. No, actually, what I'm saying here is more fundamental than that. In other words, you can go... In Horne v. Shinseki, the expert opinion was a checkmark in a box with no explanation for the opinion itself. Absolutely no way to determine whether or not that ultimate opinion has any probative value. It is the rationale for the decision that gives it probative value. A VA adjudicator, who is the fact finder here, who's supposed to be operating in a paternalistic manner, the only way that he can assess the probative value of that expert opinion is if there's a full explanation of that. Compare it to the adversarial civil system where a party has the right to pretrial discovery of the rationale for the expert's opinion. He has a lawyer who's going to do that for them. More often than not, he's going to have his own expert that's going to guide the lawyer in doing that. Not only does he have that, he has the right to cross-examine that individual before the fact finder so the fact finder can assess the rationale for the ultimate opinion. There's nothing comparable, at least at this point, in the VA adjudicatory system. In order for there to be any way for the VA adjudicator to assess that opinion, its probative value and its weight is for a fully articulated rationale. If you don't have that, I think that is a question that a court should review. Otherwise, you have very little judicial review over whether or not that rationale is at. I've run into my rebuttal time. You can save the rest of your rebuttal time. Thank you. I would also add that I have not addressed it here, but we have made an argument based upon this court's jurisdiction to address questions of fact if they raise constitutional issues. I do not waive that argument. Thank you. We have that. Ms. Kirchner. May it please the court. The court should dismiss the appeal for lack of jurisdiction. The primary issue is whether the Veterans Court decision actually contains an interpretation of the duty to assist of 38 U.S. Code 5103A, subparagraph D. What the veteran has stated in its brief is that the decision contains an interpretation such that no additional medical opinion is necessary where the existing medical opinion in the record fails to adequately explain the basis of the medical opinion. That interpretation is nowhere to be found in the decision. Essentially, the veteran is litigating the wrong case. The Veterans decision, the center point of the Veterans decision is on page 2 of the decision, which is page 6 of the opinion. The Veterans Court says, succinctly stated, Mr. Escobar fails to demonstrate that the record medical evidence left the board uninformed on the issue of unemployability or that an additional medical opinion was warranted. What the Veterans Court was doing in this case was reviewing the factual findings that the board made and deciding whether those factual findings were supported adequately by the record evidence, which included the medical opinions, and then addressing the contention that another medical opinion was required. The Veterans Court found that there was no necessity to get another medical opinion and applied the plain language of the duty to assist. With regards to section 5103A, the duty to assist, there are a couple of prongs to the statute. This is just the plain language of the statute. First of all, under paragraph A, there has to be competent evidence that the veteran has a current disability. Yes, he has a current disability. He has a rating. He is rated at 60%. He is disabled. And then under paragraph B, it has to be service-connected. That disability from the gunshot wound back in 1947 is service-connected. But then the ultimate question is, does the record, and that includes the entire record, does that provide sufficient evidence to make a decision on the claim? What the Veterans Court did is review the findings, find that they were supported by the record, and find also that they did not need any additional medical evidence to decide the claim. Now, the court asked questions about the retirement date. There were explicit findings made by the board. For example, on page 48 of the joint appendix, the board made a finding of fact that he last worked in 1999. Now, it's true that there were varying evidence on that question, but the board did make an explicit finding that he retired in 1999 and that he retired due to age. Not that he retired because of disability, but that he retired due to age. What the Veterans Court did is review all of these findings and find that they were supported in the record. There is indeed a medical opinion in the record that states that he retired in 1999, and the veteran himself stated that he retired due to age. Also, the medical opinions detail his extensive work experience after having that gunshot wound. It's approximately 37 years that he worked, according to the medical opinions that are in the record. There is also the medical opinion which is directed to the question of unemployability, and it goes through his medical history, his employment history, and then it also notes the limitations, the fact that he cannot lift more than 50 pounds, he cannot carry more than 50 pounds, but also makes an explicit finding that he could work at a computer station. The other thing that I think perhaps is lost sight of is it's not just whether the veteran is unemployable, it's whether the unemployability or the contention of unemployability is service-connected. What the board did in this case is make explicit findings that it was not service-connected, and what the Veterans Court did is review those findings and find that they are supported by the record, and that there's no need to obtain yet an additional medical opinion on this precise question. So I think what this all shows is this really is an ordinary factual case. The Veterans Court did not make any interpretation of the statute, and I would also note that there is also a regulation which interprets the statute. It's cited in our brief. It's 38 CFR 3.159 paragraph C, subparagraph 4. It says essentially the same thing as the statute, but what the Veterans Court did is just apply plain language in this case, no additional interpretation, and it reviewed the record and found that all the findings were supported. If the court has no questions. Thank you, Ms. Kushner. About a minute and a half? Yes, very briefly. My sister says that the Veterans Court decision doesn't have any interpretation of 5103, the duty to assist. That's absolutely correct. It doesn't say that it's reviewing question of fact. It doesn't refer to the clearly erroneous standard. It doesn't refer to anything like that, but I think that we have to presume that it was following the precedential decisions that came before it. Also, what we did not hear is why the adequacy of the rationale should be a question of fact in the unique paternalistic VA system. I would also add one point is that we're also asserting that the rationale is essentially a condition precedent to the legal sufficiency of the opinion. Under the Walter case, this court does not have jurisdiction to make factual sufficiency determinations of the facts, but it has the ability to make determinations as to the legal sufficiency of certain evidence. It cites Metropolitan v. Moore, a United States Supreme Court case, which gives the example of if a fact requires two witnesses to testify to it and only one witness testifies to it, that fact is legally insufficient and may not be used. What we're saying here is that a rationale that is insufficient to permit the adjudicator to assess the probative value of the opinion is a condition precedent to the legal sufficiency of the opinion being used by the VA adjudicator. Thank you, Mr. Bender. Thank you.